IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SEAN NETTLES (Fed. Reg. #10622-003),  :

            Plaintiff,  :

vs.  :  CIVIL ACTION NO. 10-00504-CG-N

SAM COCHRAN, et al.,  :

            Defendants.  :

REPORT AND RECOMMENDATION

Plaintiff, a federal prison inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983.[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendants, Sheriff Sam Cochran and Sergeant Robert Keith Miller (Docs. 17, 18), and Plaintiff's opposition thereto. (Doc. 26). For the reasons set forth below, it is recommended that Defendants' motion for summary judgment be granted and that Plaintiff's action be dismissed with prejudice.

I. SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. In December, 2007, while incarcerated in the Mobile County Metro Jail ("Metro Jail"), Plaintiff and two other inmates,

---

1 Plaintiff is currently in federal custody. (Doc. 1 at 1). However, his § 1983 complaint arises out of events that occurred during his incarceration in the Mobile County Metro Jail from 2007 to 2009. (Id. at 4; Doc. 17, att. 1).

1

Christopher Johnson and Curtis Williams, contacted an individual by the name of Kentrell Collins and requested that Collins fraudulently fund their jail accounts with stolen credit card numbers.[2] (Doc. 17, att. 1 at 1; S.D. Ala. Action No. 09-cr-00014-KD, Doc. 70 at 14). At that time, Collins was employed as a Sears telephone service center representative in Mobile, Alabama. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 70 at 14-15). Collins agreed, and from December 11, 2007, to December 14, 2007, Collins used the fraudulently retained credit card numbers and identifying information of Sears customers to make thirty-one transfers totaling $9,300.00 into Plaintiff's inmate account via the Government Payment System website.[3] (Id.).

Sometime in 2008, a money clerk at the Metro Jail became suspicious of the transfers into Plaintiff's account and notified Defendant, Sergeant Robert Keith Miller, an investigator with the Mobile County Sheriff's Department, who conducted an investigation and then notified the United States Secret Service of his findings. (Doc. 17, att. 1 at 1). On January 29, 2009, Plaintiff was indicted on federal charges including conspiracy to commit access device fraud, access device fraud, wire fraud, and aggravated identity theft. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 1). On April 21, 2009, Plaintiff pled guilty to conspiracy to commit access device fraud and aggravated identity theft and was sentenced to forty-eight months imprisonment, supervised release for a term of three years, a special assessment of $200.00, and restitution in the amount of

---

2 Plaintiff's § 1983 action involves allegations related to his criminal case in this Court, and, thus, the facts and proceedings of the criminal case are included herein where relevant. See S.D. Ala. Action No. 09-cr-00014-KD.

3 Collins additionally made thirteen transfers into Johnson's inmate account totaling $3,900.00 and five transfers into Williams' account totaling $1,500.00. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 70 at 15).

$8,996.31. (Id., Doc. 128). In the Judgment entered on August 11, 2009, the Honorable Kristi K. DuBose ordered Plaintiff to pay the restitution debt immediately and in full to the Clerk of Court. (Id.). On September 8, 2009, the United States filed a "Notice of Lien for Fine and/or Restitution Imposed Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996" with the Probate Court of Mobile County, Alabama, in the amount of $9,196.31, against the property of Sean Andre Nettles, which represented the $8,996.31 restitution judgment plus the $200.00 special assessment. (Doc. 17, att. 1 at 5).

On July 27, 2010, Plaintiff filed a motion in his criminal case to have the funds in his inmate account at the Metro Jail released to him. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 135). Judge DuBose denied the motion, finding that the Court lacked jurisdiction to grant the requested relief because the funds were being held by the Mobile County Sheriff's Department and were not in the possession or custody of the United States. (Id., Doc. 136).

On September 13, 2010, Plaintiff filed the complaint in the present action, claiming that Defendants, Sheriff Sam Cochran and Sergeant Robert Keith Miller, were violating his constitutional rights by refusing to relinquish the funds in his inmate account to him.[4] (Doc. 1). Thereafter, on February 1, 2011, the United States began garnishment proceedings in Plaintiff's criminal case to obtain those funds. (S.D. Ala. Action No. 09-cr-00014-KD, Docs. 139, 140). On February 3, 2011, this Court issued a Writ of Garnishment in the criminal action, and Plaintiff

---

4 Plaintiff filed a virtually identical § 1983 action in this Court against Sheriff Cochran and other employees of the Mobile County Sheriff's Department on December 1, 2009, seeking to have the Court order Defendants to relinquish the funds in his inmate account to him. (Civil Action No. 09-778-KD-B, Doc. 1). That complaint was dismissed without prejudice on April 19, 2010, for failure to prosecute. (Id., Doc. 8).

3

answered the Writ of Garnishment on February 25, 2011, requesting a hearing and a transfer of the garnishment proceedings.[5] (Id., Doc. 140; Doc. 142 at 2). On February 28, 2011, Sheriff Cochran, the garnishee, filed an answer to the Writ of Garnishment, stating that $5,588.55 was in Plaintiff's inmate account and was being held pending further orders from the Court. (Id., Doc. 143).

On March 23, 2011, Judge DuBose issued an order transferring the garnishment proceedings from this Court to the Eastern District of Arkansas where Plaintiff was incarcerated. (Id., Doc. 145 at 3-4). On July 18, 2011, the Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, appointed legal counsel to represent Plaintiff in the garnishment proceedings. (E.D. Ark. Action No. 11-cr-00087-JMM, Doc. 10). Following due notice, on August 3, 2011, Judge Moody held a hearing to consider Nettles' objections to the garnishment, at which time Nettles, represented by counsel, withdrew all objections to the United States' claim to the money in the account. (Id., Docs. 13, 14). As a result, Judge Moody ordered Sheriff Cochran, the garnishee, to immediately disburse the account balance of $5,588.55 to the Clerk of Court for the Southern District of Alabama to be applied toward the judgment debt in Plaintiff's criminal case. (Id., Doc. 14 at 3-4). A garnishment payment in the amount of $5,588.55 was received by this Court from the Mobile County Sheriff's Office on August 30,

---

5 In his answer, Plaintiff acknowledged that the Court had ordered him to pay restitution in the amount of $8,996.31, jointly and severally with his three co-defendants; however, he maintained that he only owed one-fourth of the judgment. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 142 at 2 and Doc. 145 at 1-2). In addition, Plaintiff sought a transfer of the garnishment proceedings to the Eastern District of Arkansas where he was incarcerated. To date, Plaintiff remains incarcerated in the Forrest City Federal Correctional Complex at Forrest City, Arkansas. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 145 at 3).

2011, in Plaintiff's criminal action.   (Criminal Action No. 09-00014-KD, Doc. 148).

## II.   PROCEDURAL ASPECTS OF THE CASE

As stated above, on September 13, 2010, Plaintiff filed the present § 1983 action alleging that Defendants, Sheriff Sam Cochran and Sergeant Robert Keith Miller, were violating his constitutional rights to due process by refusing to release the funds in his inmate account to him. (Doc. 1).   Plaintiff requests the "refund" of his money, with interest, as well as attorney's fees, court costs, and $10,000.00 in compensatory damages.   (Id. at 7).

In the Special Report and Answer filed by Defendants on March 25, 2011, Defendants deny Plaintiff's allegations and assert various defenses and immunities including Eleventh Amendment and qualified immunity.[6]   (Docs. 17, 18).   On March 29, 2011, the Court ordered

---

[6] It is unclear whether Plaintiff has sued Defendants in their official or individual capacities or both.   Therefore, the Court will consider both.   As a state officer, Sheriff Cochran is absolutely immune from suit for damages in his official capacity.   See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1288-89 (11th Cir. 1998) (a county sheriff is a state executive officer and acts as such when supervising inmates and operating county jails).   As discussed above, Defendant Miller is an investigator with the Mobile County Sheriff's Department.   (Doc. 17, att. 1 at 1).   The Alabama courts have not settled the question of whether a sheriff's investigator, like a sheriff and a sheriff's deputy, acts as a state officer in performing his duties.   In a recent decision, Ex parte Shelley, 53 So. 3d 887, 896 (Ala. 2009), the Alabama Supreme Court indicated that it would *not* consider a sheriff's investigator to be the "alter ego" of the sheriff and, thus, would not consider such an individual to be a state officer for purposes of state immunity.   See Shelley, 53 So. 3d at 896 ("the positions appointed by a sheriff of clerk, investigator, dispatcher, jailer, and process server 'traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented.'") (citations omitted).   In any event, because the Court has found herein that Plaintiff's allegations do not establish a constitutional violation, the Court need not decide whether Defendant Miller, as a sheriff's investigator, would be considered a state official under Alabama law and, thus, would be entitled to Eleventh Amendment immunity on Plaintiff's claims asserted against him in his official capacity.

5

that Defendants' Special Report and Answer be treated as a motion for summary judgment. (Doc. 19). Plaintiff filed a response in opposition to Defendants' motion for summary judgment on May 19, 2011. (Doc. 26). Defendants' motion for summary judgment and Plaintiff's response thereto are now before the Court.

### III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. It is well established that summary judgment is proper under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

> Federal Rule of Civil Procedure 56(e) provides:
>
> If a party fails to properly support an assertion of fact or fails to

---

In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). As just noted, however, having found herein that Plaintiff's allegations do not establish a constitutional violation, there is likewise "no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009).

6

> properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>> (1) give an opportunity to properly support or address the fact;
>> (2) consider the fact undisputed for purposes of the motion;
>> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Florida Van Lines, Inc., 2012 WL 32660, *5 (S.D. Ala. 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence

7

favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." AGSouth Genetics, LLC v. Cunningham, 2011 WL 1833016, *1-2 (S.D. Ala. 2011).

IV. DISCUSSION

As set forth above, in his complaint, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of his incarceration in the Mobile County Metro Jail from 2007 to 2009. (Doc. 1 at 4; Doc. 17, att. 1). Specifically, Plaintiff claims that Defendants, Sheriff Cochran and Sergeant Miller, violated his constitutional rights to due process by refusing to release to him the funds contained in his inmate account at the jail.[7]

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994). For each of the reasons set forth below, the Court finds that Plaintiff's

---

7 Although Plaintiff references the Fourth, Fifth, and Fourteenth Amendments in his complaint, his allegations are more properly characterized as invoking the protections of the Fourteenth Amendment, specifically, the Fourteenth Amendment right to procedural due process.

8

claims fail as a matter of law.

    A. <u>Mootness – No Case or Controversy</u>.

    As discussed above, Plaintiff filed his complaint in this action seeking money damages and an injunction ordering Defendants to release to him the funds that were being held in his inmate account at the Mobile County Metro Jail. (Doc. 1). During the pendency of this action, the United States began garnishment proceedings in Plaintiff's criminal case to obtain those same funds. (S.D. Ala. Action No. 09-cr-00014-KD, Docs. 139, 140). At Plaintiff's request, the garnishment proceedings were transferred to the Eastern District of Arkansas. (<u>Id.</u> at 145). At that time, Judge Moody appointed Plaintiff legal counsel and granted him a hearing relative to his objections. (E.D. Ark. Action No. 11-cr-00087-JMM, Doc. 10; S.D. Ala. Action No. 09-cr-00014-KD, Doc. 145). At the hearing conducted on August 3, 2011, Plaintiff, represented by counsel, withdrew all objections to the United States' claim to the funds in his inmate account. (E.D. Ark. Action No. 11-cr-00087-JMM, Docs. 13). Consequently, Judge Moody ordered Sheriff Cochran to immediately disburse the account balance to the Clerk of Court for the Southern District of Alabama to be applied toward the judgment debt in Plaintiff's criminal case. (<u>Id.</u>, Doc. 14). Sheriff Cochran complied on August 30, 2011. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 148).

    The law is clear that courts have "no authority 'to give opinions on moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case. . . .'" <u>Bekier v. Bekier</u>, 248 F.3d 1051, 1054 (11th Cir. 2001) (quoting <u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992)). "A case is moot if no case or controversy exists" to be resolved, such as where "the issues presented are no longer 'live'" or where "the parties lack a legally cognizable interest in the outcome." <u>Id.</u> (citations omitted). "If an event

9

occurs during the pendency of an [action] 'that makes it impossible for this court to grant any effectual relief whatever to a prevailing party, the [action] must be dismissed.'" Id. (citations and footnote omitted).

There is no question that Plaintiff's voluntary withdrawal of his objections to the garnishment proceedings in his criminal case resulted in the funds being paid into court and applied toward his restitution debt. Therefore, Plaintiff has made it impossible for this Court to grant his request that Defendants be ordered to relinquish the funds in his inmate account to him, and, as a result, his claim for injunctive relief is moot.

Plaintiff has also requested monetary relief, including interest on the funds in his account, court costs, attorneys fees, and $10,000.00 in compensatory damages. (Doc. 1 at 7). As with his claim for injunctive relief, the withdrawal of Plaintiff's objections to the garnishment proceedings have rendered his claims for monetary relief moot.[8] While claims for damages generally "do not become moot as a result of the *defendants*' acts following the occurrence giving rise to the claims," Reich v. Occupational Safety & Health Review Comm'n, 102 F.3d 1200, 1202 (11th Cir. 1997) (emphasis added), in this case, Plaintiff's damages claims have become moot as a result of *his own* acts, not the defendants. By withdrawing his objections to the garnishment proceedings in his criminal case, Plaintiff conceded the United States' right to the funds in the account, as well as his own lack of a cognizable interest therein, and effectively extinguished the controversy in this case concerning Defendants' alleged violation of his rights to due process by withholding the funds from him. Consequently, all of Plaintiff's claims for relief arising out of Defendants' refusal to give him the money in his inmate account are moot.

---

8 With respect to Plaintiff's request for attorneys fees, it is also undisputed that he is proceeding *pro se* and has incurred no attorneys fees in this case.

B. No Evidence that Plaintiff was Denied Due Process.

Even assuming that Plaintiff's claims were not rendered moot by the withdrawal of his objections in the garnishment proceedings, Plaintiff's claims fail as a matter of law for lack of evidence that he was denied due process. The Due Process Clause of the United States Constitution protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV; see Walker v. Sun Trust Bank of Thomasville, GA, 363 Fed. Appx. 11, 17 (11th Cir. 2010) (unpublished)[9] ("[p]rocedural due process rules . . . protect an individual from the unjustified deprivation of life, liberty, or property.") (citing Carey v. Piphus, 435 U.S. 247, 259 (1978)).

In this case, Plaintiff complains that, from August 24, 2009, to the date that he filed his complaint on September 13, 2010, Defendants, without cause or due process, refused to allow him to have the funds in his inmate account. (Doc. 1 at 5). However, as set forth in detail above, Plaintiff's inmate account was the subject of a criminal investigation and prosecution in this Court in 2008 and 2009 related to the undisputed transfer of over $9,000.00 into Plaintiff's inmate account from stolen credit cards. Plaintiff pled guilty to conspiracy to commit access device fraud and aggravated identity theft and was sentenced on August 11, 2009, to forty-eight months imprisonment, supervised release for a term of three years, a special assessment of $200.00, and restitution in the amount of $8,996.31. (Doc. 17, att. 1 at 1; S.D. Ala. Action No. 09-cr-00014-KD, Doc. 70 at 14-15; Doc. 128). Thereafter, on September 8, 2009, the United States filed a lien for the restitution judgment in the Probate Court of Mobile County, Alabama, against all property belonging to Plaintiff. (Doc. 17, att. 1 at 5).

---

9 "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

The foregoing notwithstanding, Plaintiff filed a motion in his criminal case on July 27, 2010, seeking to withdraw the money from his inmate account. (S.D. Ala. Action No. 09-cr-00014-KD, Doc. 135, Doc. 136). When that motion was denied, Plaintiff filed the present § 1983 action to get hold of the funds. (Doc. 1). While the current action was pending, the United States instituted garnishment proceedings, at which time Plaintiff, represented by appointed counsel, withdrew all objections to the United States' claim over the funds. (S.D. Ala. Action No. 09-cr-00014-KD; Doc. 139, Doc. 145).

Given the extensive court proceedings detailed above, all of which involved the issue of Plaintiff's entitlement to the funds in his inmate trust account at the Metro Jail, there is no question that he received due process relative to Defendants' refusal to relinquish the money to him. Therefore, Plaintiff's Fourteenth Amendment claims against Defendants Cochran and Miller fail as a matter of law.

Moreover, even assuming that Defendants had denied Plaintiff due process related to the funds in his inmate account, even "'an unauthorized *intentional* deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the 14th Amendment if a meaningful post-deprivation remedy for the loss is available.'" Tinney v. Shores, 77 F.3d 378, 382 (11th Cir. 1996) (emphasis in original) (quoting Hudson v. Palmer, 468 U.S. 517, 531 (1984)). See Blair v. Meeks, 2009 WL 3157238, *1-2 (M.D. Ala. 2009) (inmate's due process claim based on sheriff's alleged improper confiscation of funds from his prison account was subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) because "all the Due Process Clause requires is the availability of an adequate post-deprivation remedy," and "[t]he State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for [plaintiff] to seek redress for the loss of his property."). Therefore, Plaintiff's

allegation that Defendants violated his rights to due process by denying him access to the money in his inmate account entitles him to no relief from this Court.

For each of the foregoing reasons, Plaintiff's claims against Defendants fail as a matter of law.

## V.   CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.   Accordingly, it is recommended that Defendants' motion for summary judgment (Docs. 17, 18) be granted and that the entirety of Plaintiff's complaint against Defendants be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this __11th__ day of January, 2012.

  s/Katherine Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.   Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[10] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   <u>Fed. R. Civ. P.</u> 72(b)(2).